## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2017, 10:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Braden J. Dean
Hillis, Hillis, Rozzi & Achey
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of I.S. (Child),

and

M.B. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

May 31, 2017

Court of Appeals Case No.
79A05-1611-JT-2743

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause No.
79D03-1602-JT-21

**Vaidik, Chief Judge.**

# Case Summary

[1]     M.B. ("Mother") has abused drugs for years. The Department of Child Services (DCS) intervened when her daughter, I.S., who has special medical needs, was about one month old and later filed a petition to terminate Mother's parental rights when she stopped participating in services. Mother now appeals the termination of her parental rights, arguing that the evidence is insufficient. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

[2]     Mother has a history of substance abuse dating back to 2011. She tested positive for cocaine in July 2014, when she was pregnant with I.S.[1] I.S. was then born on September 19, 2014. C.S. ("Father") is the father of I.S.[2] At birth, I.S. was diagnosed with cloverleaf skull syndrome, which is a subset of craniosynostosis, and underwent corrective surgery; I.S. has special medical needs and will require additional surgeries as well.[3]

---

[1] At this time, Mother had a pending CHINS case in another county regarding two of her children who had been removed from her care due to her drug use. The White Circuit Court terminated Mother's parental rights to these children on March 31, 2015. Ex. Vol. 3, Ex. 19 & 20.

[2] Although Father's parental rights were also terminated below, he is not a party to this appeal. Accordingly, this opinion mainly discusses those facts relevant to Mother.

[3] The juvenile court explained that I.S.'s developmental delays have become more apparent as she has grown and noted that she specifically struggles with hearing and speech.

[3]     In October 2014, DCS received a report that Mother and I.S. were at a gas station; Mother appeared impaired, and I.S. was not appropriately dressed for the weather. In December, DCS filed a petition alleging that I.S. was a child in need of services (CHINS). Mother and Father were ordered to submit to drug screens, maintain communication with DCS, and allow DCS to make unannounced visits to their home.

[4]     In January 2015, while the CHINS petition was pending, DCS requested to take I.S. into custody based on Mother's and Father's unwillingness to communicate with DCS regarding I.S.'s medical needs, their failure to submit to drug screens, and their failure to cooperate with home visits to assess I.S.'s safety. The juvenile court authorized DCS to take temporary custody of I.S.

[5]     In February 2015, the juvenile court held a fact-finding hearing and found that I.S. was a CHINS. The court placed I.S. in foster care. A dispositional hearing was then held, following which the court ordered I.S. to remain in foster care and entered a parental-participation decree that required Mother to, among other things: (1) not consume drugs or alcohol; (2) submit to random drug screens upon request of DCS, CASA, or other service providers; (3) complete a mental-health assessment and follow all recommendations; (4) notify DCS of any prescriptions and take all medications as prescribed; (5) participate in case management and follow all recommendations; (6) participate in visitation pursuant to agreement by the parties; and (6) continue NA/AA meetings and provide verification to DCS.

[6] The juvenile court found Mother in contempt in April 2015 for failing to attend scheduled case-management appointments and failing to submit to drug screens. To purge the contempt, Mother was remanded to the Tippecanoe County Jail, to be released upon admission to Home with Hope or another inpatient treatment facility.

[7] Mother was again found in contempt in July 2015. The juvenile court found that Mother had a diluted drug screen on June 7, was unsuccessfully discharged from Home with Hope on June 11, did not attend a scheduled visit with I.S. on June 15 and was unsuccessfully discharged from visitation services because it was her third missed visit, and tested positive for drugs on June 16. To purge the contempt, Mother was ordered to complete the Lighthouse Recovery program. In the event Mother did not successfully complete the program, the court ordered Mother to serve thirty days in jail.

[8] At a permanency-planning hearing in mid-September 2015, the juvenile court noted that Mother was twenty-six weeks pregnant. The court ordered Mother to immediately obtain prenatal care and follow her provider's recommendations. The court admonished Mother that continued drug use during her pregnancy may result in a contempt finding and incarceration.

[9] About ten days later, the juvenile court found Mother in contempt—for a third time—for failing a drug screen and being discharged from Lighthouse Recovery. The court sentenced her to the Tippecanoe County Jail for forty-five

days, pending early release if she was admitted directly into a residential treatment program.

[10] Mother gave birth on November 27, 2015. Mother was living in a homeless shelter at the time. The child was immediately placed in a guardianship with the paternal grandmother.

[11] In December 2015, Mother and Father moved into an apartment in Lafayette. Mother started missing scheduled appointments and visits around this time, too. By January 2016, Mother tested positive for methamphetamine. In order to ensure I.S.'s safety during visits, Mother was ordered to submit to drug screens before each scheduled visit. Mother did not submit to such drug screens and has not seen I.S. since January 2016.

[12] On February 22, 2016, DCS filed a petition to terminate Mother's and Father's parental rights to I.S. Shortly thereafter, Mother and Father were evicted from their apartment. Father then moved in with his father in Chicago; Mother joined them at the end of May.

[13] A two-day termination hearing was held in June and August 2016. Mother testified that since moving to Chicago, she had been employed full time at a restaurant, sober, and attending AA/NA meetings five times a week. The court-appointed special advocate (CASA) Suzanne Magnante, who had been involved in the case since December 2014 when the CHINS petition was filed, testified that Mother was "unsuccessfully discharged from every service that she began" and "did not complete any of her services." Tr. p. 168. The CASA said

that sobriety was "absolute[ly] paramount" to Mother's success, yet Mother did not successfully complete any such program. *Id.* The CASA noted that Mother stopped submitting records, including proof that she had been attending AA/NA meetings in Chicago, to DCS in February 2016. *Id.* Accordingly, the CASA testified that despite Mother's testimony, she had "no evidence" that Mother was now sober or had appropriate housing. *Id.* at 172. The CASA also discussed I.S.'s "very serious" condition and her belief that Mother could not meet I.S.'s needs in a safe and healthy fashion. *Id.* at 170. Finally, the CASA testified that it was in I.S.'s best interests for Mother's parental rights to be terminated and for I.S. to be adopted by her current foster parents. The DCS family case manager, Sara Atchison, likewise believed that it was in I.S.'s best interests for Mother's parental rights to be terminated. *Id.* at 150.

[14] The juvenile court issued an order terminating Mother's parental rights to I.S. in November 2016. The court found:

> 20. Although Mother produced several negative samples during the CHINS proceeding, Mother tested positive for the presence of drugs on 07/18/2014 (cocaine), 01/21/2015 (dilute sample), 01/21/2015 (dilute sample), 02/05/2015 (opiates-hydrocodone/EtG), 04/07/2015 (opiates-dilute sample), 04/07/2015 (opiates-dilute sample), 06/07/2015 (dilute sample), 06/16/2015 (opiates), 08/27/2015 (tramadol), 09/15/2015 (opiates-hydrocodone/hydromorphone), 01/04/2016 (opiates-6MAM/morphine), 02/08/2016 (amphetamine/methamphetamine/opiates-morphine), and 04/25/2016 (cocaine/oxycodone).

* * * * *

27. . . . Neither parent has visited the child since January 2016. Both parents were discharged from visitation services due to cancellation. . . .

* * * * *

31. Mother's history of employment has been sporadic. Mother reports employment at a restaurant in Chicago making approximately $480.00 per week. Mother reports paying rent to Paternal Grandfather in the sum of $100.00 per week. Mother's driver's license is suspended. Mother reports she is unable to travel to Lafayette from Chicago and admits failing to maintain contact with DCS.

* * * * *

33. Neither parent is enrolled in treatment in Chicago other than attending AA/NA meetings. Neither parent has a sponsor. Mother reports working on Step Three (3) but is unable to define it. . . . Mother reports remaining sober while in Chicago.

34. During separate periods of the CHINS case, each parent demonstrated short-term periods of sobriety and began to approach stability. However, consistent with prior history, neither parent was able to sustain progress. **The recent and short period of reported employment, housing, and limited drug use does not outweigh a lengthy history of instability.** Every child born of these parents has been exposed to parental substance use. . . .

35. As of the termination hearing in August 2016, neither parent was attempting to engage in services and had maintained only limited contact with DCS. **Neither parent provided verification regarding reported housing, employment, or Twelve (12) Step**

> **Meetings. Both parents failed to make arrangements for the collection of court-ordered drug screens.**

Appellant's App. Vol. II pp. 11-13 (emphases added). Accordingly, the court concluded:

> 1. There is a reasonable probability the conditions that resulted in removal of the child from the home or the reasons for continued placement outside the home will not be remedied. **Neither parent has demonstrated the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either parent will be able to maintain stability in order to care and provide adequately for the child.**
>
> * * * * *
>
> 4. [I]t is in the best interests of [I.S.] that the parental rights of [Mother] . . . be terminated.

*Id.* at 14 (emphasis added).

[15]  Mother now appeals.

# Discussion and Decision

[16]  Mother contends that there is insufficient evidence to support termination of her parental rights to I.S. When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court.

*Id.* When a trial court has entered findings of fact and conclusions, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence clearly and convincingly supports the trial court's findings and whether the findings clearly and convincingly support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[17] A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

# I. Reasonable Probability That the Conditions Resulting in Removal or the Reasons for Placement Outside the Home Will Not Be Remedied

[18] Mother first argues that there is insufficient evidence to support the juvenile court's conclusion that there is a reasonable probability that the conditions that resulted in I.S.'s removal or the reasons for placement outside the home will not be remedied.[4] In determining whether the conditions that resulted in the child's removal will not be remedied, the juvenile court engages in a two-step analysis. "The court first identifies the conditions that led to removal and then determines whether there is a reasonable probability that those conditions will not be remedied." *In re A.W.*, 62 N.E.3d 1267, 1273 (Ind. Ct. App. 2016) (citing *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014)). A parent's fitness is measured at the time of the termination hearing and changed circumstances are balanced against habitual conduct to see if there is a "substantial probability of future neglect or deprivation." *Id.*

[19] Mother argues that the juvenile court failed to take into account her "changed circumstances at the time of the termination hearing," specifically that she "moved into a stable home environment, was employed with steady income,

---

[4] Mother also argues that there is insufficient evidence to support the trial court's conclusion that there is a reasonable probability that continuation of the parent-child relationship poses a threat to I.S.'s well-being. Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires clear and convincing evidence of only one of the circumstances listed in subsection (B). *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans denied*. Because we conclude that there is sufficient evidence to support the trial court's conclusion that there is a reasonable probability that the conditions resulting in I.S.'s removal will not be remedied, we do not address this argument.

and was addressing her drug addiction through weekly NA and AA meetings." Appellant's Br. p. 12. To the contrary, the juvenile court specifically acknowledged Mother's testimony but noted that she did not provide "verification" regarding her reported housing, employment, or twelve-step meetings. Appellant's App. Vol. II p. 13 (Finding No. 35). And to the extent Mother had improved her circumstances between the time she moved to Chicago in late May 2016 and the August 2016 termination hearing, the court found that "[t]he recent and short period of reported employment, housing and limited drug use does not outweigh a lengthy history of instability." *Id.* (Finding No. 34). The juvenile court was within its discretion to disregard efforts made only shortly before termination and to put more weight on Mother's history of conduct before those efforts were made. The evidence is sufficient to support the juvenile court's conclusion that there is a reasonable probability that the conditions that resulted in I.S.'s removal or the reasons for placement outside the home will not be remedied.

## II. Best Interests

[20] Mother also argues that there is insufficient evidence to support the juvenile court's conclusion that termination of her parental rights is in the best interests of I.S. To determine what is in a child's best interests, the juvenile court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In doing so, the court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.*

In support of her argument that termination is not in the best interests of I.S., Mother again points to her testimony that she has made "considerable strides" since moving to Chicago. Appellant's Br. p. 14. However, the recommendation by both a case manager and a CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *A.D.S.*, 987 N.E.2d at 1158-59. Here, both the CASA and the family case manager testified that termination is in the best interests of I.S. And, as we have already addressed, the evidence is sufficient to support the juvenile court's conclusion that there is a reasonable probability that the conditions that resulted in I.S.'s removal or the reasons for placement outside the home will not be remedied. Accordingly, the evidence is also sufficient to support the court's conclusion that termination is in I.S.'s best interests.

Affirmed.

Bailey, J., and Robb, J., concur.